IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DEAN SMITH, SR., et al.,

                Plaintiffs,

v.                                            CIVIL ACTION NO.  2:10-cv-00709

JP MORGAN CHASE BANK, N.A., et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the Motion to Dismiss [Docket 18] by the defendant, Birchenough Mortgage Services, Inc. ("BMS").  By its motion, BMS asks the court to dismiss this case for improper venue.  BMS alternatively asks that this case be transferred to the United States District Court for the Northern District of West Virginia.  The Motion is **DENIED**.

**I. Background**

This motion presents an issue that appears to have been unaddressed by the federal courts. Defendant BMS was named as a defendant in the initial state court lawsuit filed by the plaintiffs. But it was not served until after the case was removed to federal court.  The question for the court is whether the general removal statute, 28 U.S.C. § 1441(a), dictates venue, or whether the general venue statute, 28 U.S.C. § 1391, applies.  As explained below, I hold that controlling precedent and statutory text dictate that in a circumstance such as this venue is governed by the removal statute.

*A. Facts*

According to the Complaint, the plaintiff, Dean Smith, is a retiree living in Berkeley Springs, West Virginia. Berkeley Springs is in Morgan County, which lies within the federal Northern District of West Virginia. He has only an eighth-grade education and claims to be unsophisticated in financial matters.

According to the Complaint, in 1994, Smith and his wife purchased the property containing their home, along with three adjoining lots, for approximately $45,000. Smith's wife died in 2006. As bills added up, Smith decided to borrow some money. At the time, Smith's residence had a market value of $200,000. There was a $20,000 lien on the property. The adjoining properties were worth $60,000; $60,000; and $65,000, and were unencumbered. In 2007, Smith contacted his local bank, seeking a $60,000 loan. His bank declined Smith's loan request, but referred him to BMS, a mortgage broker in Winchester, Virginia.

Smith called BMS and left a message inquiring about obtaining a loan. A BMS agent returned Smith's phone call and took some information. She asked Smith to meet her in the parking lot of a McDonald's restaurant. Smith complied and went to the parking lot with his son in June 2007.

Meeting at the parking lot, Smith sat in the BMS agent's car. The agent told Smith he qualified for a $100,000 loan. She advised him to borrow the full amount. Smith did not understand how he could qualify for such a loan; his monthly income was around $850. Seemingly unconcerned by Smith's lack of income, the agent instructed Smith where to sign on the loan papers. Smith told the agent that he the loan secured by his residence only; he did not want to have the three adjoining lots encumbered. The agent agreed. And although Smith offered to have his property

appraised, the agent declined. The agent told Smith that she would get him a good deal for the loan, and that the interest rate would be around 6.5%.

About two weeks later, BMS contacted Smith and told him where to attend the loan closing. On July 5, 2007, Smith, along with his son, attended the closing of his loan. Smith claims he received no disclosures prior to closing. The terms of the loan were as follows:

- the loan amount was $100,100;

- the interest rate was an adjustable 8.875%, which could adjust upward to 15.875% after five years;

- the initial monthly payments were $796.44; and

- Smith's residence was the sole security for the loan. The three adjoining lots were not listed as collateral.

Smith contends that he received no copies of the loan documents at closing, and was instead instructed to pick them up from BMS a few days later. He asserts he went to pick up the loan papers on July 11. They were enclosed in an envelope marked, "To be picked up on or after Tues., 11 July." (Compl. ¶ 27.) Smith's right of rescission had expired two days prior, on July 9, 2007.

After closing, Smith paid on the loan for nearly two years. But, in March 2009, he began falling behind on his payments. Smith requested a loan modification from the loan servicer, Chase Home Finance, LLC ("Chase Home Finance"). Although Chase Home Finance initially told Smith that it would modify his loan, it ultimately denied the modification request because Smith had insufficient income. Shortly thereafter, in September 2009, Smith received a notice of foreclosure. The notice stated that his lenders would foreclose not just on his residence, but on his adjoining lots as well.

Smith's lenders offered an alternative to foreclosure. They told Smith he could short-sell his properties to extinguish his debt. Smith was never offered a loan modification. He alleges that, after he refused the short-sale option, and after he continued to refuse to release his security interest in his properties, the lenders engaged in unlawful loan collection activities.

*B. Procedural History*

On March 18, 2010, Smith filed suit in the Circuit Court of Kanawha County, West Virginia. He asserts that the loan was predatory and violated the Truth in Lending Act, 15 U.S.C. § 1635. Smith further maintains that the defendants engaged in unconscionable conduct, fraud, negligence, breach of fiduciary duty, conspiracy, and illegal debt collection practices, in violation of West Virginia law. Named in the lawsuit are the broker, BMS; the lender, JP Morgan Chase Bank, N.A. ("JP Morgan Chase"); the loan servicer, Chase Home Finance; and the bond provider, Erie Insurance Property & Causality, Co. ("Erie"). The defendants are all non-West Virginia residents.

On May 5, 2010, with Erie's consent, JP Morgan Chase and Chase Home Finance removed this case to federal court. BMS was not served until May 19, 2010, after the case had been removed, and therefore never consented to removal. On June 22, 2010, BMS filed its motion to dismiss or transfer. BMS has not challenged removal in this case.

**II. Discussion**

BMS asks the court to dismiss this case for improper venue or, in the alternative, to transfer it to the Northern District of West Virginia. BMS seeks dismissal for improper venue, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. BMS asserts that venue does not lie in the Southern District of West Virginia, because none of the requirements of the general venue statute,

28 U.S.C. § 1391, are satisfied.  Therefore, BMS argues, the case should be dismissed or transferred to the district where venue is proper:  the Northern District of West Virginia.  Smith counters that the general venue statute does not apply here.  Rather, he argues, the general removal statute, 28 U.S.C. § 1441(a), applies, and under that statute, venue is proper in this district.  Furthermore, Smith maintains, a transfer based on convenience is not warranted.

### A.  *The General Removal Statute Controls Venue*

The first issue is which statute controls venue in this case:  the general venue statute or the general removal statute.  It is a long-standing rule of federal civil procedure that when a case is removed to federal court, the general removal statute governs venue.  *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-66 (1953) ("The venue of removed actions is governed by 28 U.S.C. § 1441(a)," and § 1391 "has no application to . . . a removed action.").  The general removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  Because this case was filed in the Circuit Court of Kanawha County, West Virginia, and removed to this district, venue would normally be proper in this district under § 1441(a).

But this case has a wrinkle:  BMS was not served until after removal.  Therefore, unlike its co-defendants, BMS was unable to challenge venue when the case was first filed in state court.  In such circumstances, BMS argues, the general removal statute does not govern control venue.  Rather, it asserts, § 1441(a) only controls venue when the defendants to the action were served *prior to removal*.  But, when there are defendants served *after removal*, BMS contends that those later-

served defendants may make a post-removal venue challenge under the general venue statute. Under the general venue statute, BMS maintains, venue is improper in the Southern District of West Virginia, and this case must be dismissed or transferred.

To support its contention, BMS cites *Carter v. American Bus Lines, Inc.*, 169 F. Supp. 460 (D. Neb. 1959). In that case, a corporation, Flxible, was impleaded as a third-party defendant after the case had been removed to federal court. Among other things, the corporation challenged venue. The district court ruled that the venue statute, not the removal statute, controlled. The court gave two reasons for its ruling. The first was based on the text of § 1441(a). Section 1441(a) states that a removable action is "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." The court reasoned that § 1441(a) did not apply to a third-party defendant impleaded after removal, because there was never an "action brought in a State court" against that entity. *Carter*, 169 F. Supp. at 469. The second reason given by the court was based on policy. The court explained, "To hold [that 1441(a) applies] would mean that Flxible's venue defense was lost by the act of the third-party plaintiff before Flxible, the third-party defendant, had participated in the case at all. In effect it would obviate the defense in such cases." *Id.*; *see also Digital Merchant Sys., Inc. v. Oglesby*, 1999 WL 1101769 at *5 (N.D. Ill. Nov. 30, 1999) (ruling that venue was not controlled by § 1441(a) with respect to a defendant added after removal "because, as to him, the matter was never removed").

While *Carter* and *Oglesby* are instructive, they are not directly on point. BMS is in a different posture than the parties challenging venue in *Carter* and *Oglesby*. In those cases, the party challenging venue was not named in the complaint filed in state court. They were instead brought

into the case after removal. Conversely, BMS was named as a defendant in the state court complaint, but it was not served until after removal.

Under the rule in *Polizzi*, § 1441(a) controls venue in cases "brought in a State court" and removed to federal court. Federal Rule of Civil Procedure 3 provides, "A civil action is commenced by filing a complaint with the court." "Brought" and "commenced" are synonymous. *See, e.g.*, *Gibbs v. Ryan*, 160 F.3d 160, 162-63 (3d Cir. 1998). Therefore, even though BMS was not served until after removal, a state action was technically "brought" against it. There is no escaping the statutory language. Section 1441(a) provides the proper venue for this case. This action was removed from Kanawha County Circuit Court to this court. No defendant has challenged the propriety of removal. As such, this case was properly removed, and venue lies in this district.

    *B. Convenience Does Not Require Transfer*

Alternatively, BMS asks this court to transfer this case to the Northern District of West Virginia pursuant to 28 U.S.C. § 1404(a). That statute authorizes a district court to transfer a case to another judicial district "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In deciding whether to transfer a case under § 1404(a), a court must first determine whether the action "might have been brought" in the transferee district. *Id.* If so, then the court may consider several private- and public-interest factors, such as ease of access to evidence; the convenience of the parties and witnesses; the cost of obtaining the attendance of witnesses; the availability of compulsory process; the possibility of a view; the interest in having local controversies decided at home; and the interests of justice. *AFA Enters., Inc. v. Am. States Ins. Co.*, 842 F. Supp. 902, 909 (S.D. W. Va. 1994). The party seeking transfer carries the burden of showing that the current venue is inconvenient. *N.Y. Marine & Gen. Ins. Co. V. Lafarge N. Am.,*

*Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010). The plaintiff's choice of forum is accorded great weight. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).

Assuming that the Northern District of West Virginia is a place where this case could have been brought, the defendants have not shown that the Northern District will be more convenient than the Southern District. The access to evidence will be the same in both districts. While the plaintiff is in the Northern District, all of the defendants are located outside the state. It appears that, aside from the plaintiff, any witnesses will be found out-of-state and would have to travel to West Virginia, regardless of which venue is chosen. The plaintiff chose to bring his suit in the Southern District to minimize his legal fees and costs. BMS has simply failed to carry its burden of proving that the Northern District would be a more convenient forum to try this case. Justice is best served by having this case proceed in the Southern District of West Virginia. BMS's transfer request is therefore **DENIED**.

### III. Conclusion

The Motion to Dismiss or Transfer [Docket 18] is **DENIED**. The court further **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party, and to post a copy of this published opinion on the court's website, *www.wvsd.uscourts.gov*.

ENTER: August 3, 2010

Joseph R. Goodwin, Chief Judge